IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARLA CANASTRA,<br><br>                    Plaintiff,<br><br>        v.<br><br>SAFEWAY, INC.,<br><br>                    Defendant. | CIV. NO. 23-00210 JMS-RT<br><br>ORDER GRANTING IN PART AND DENYING IN PART SAFEWAY, INC.'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 50 |

**ORDER GRANTING IN PART AND DENYING IN PART SAFEWAY, INC.'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 50**

**I.  INTRODUCTION**

Plaintiff Carla Canastra ("Canastra") claims that she was discriminated against by her employer Safeway, Inc. ("Safeway") on the basis of age and disability.  She asserts discrimination claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Count I); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (Count II); Title V of the Rehabilitation Act (Count III); and Hawaii Revised Statutes ("HRS") Chapter 378 (Count IV).  ECF No. 1 at PageID.18–22.  She also asserts a retaliation claim under Title V of the ADA (Count V).  *Id.* at PageID.22–24.  Safeway moves for summary judgment on all claims.  ECF No. 50.

For the reasons to follow, the motion for summary judgment is:

(1)     GRANTED as to Canastra's ADEA claim (Count II), Rehabilitation Act claim (Count III),[1] and ADA retaliation claim (Count V);

(2)     GRANTED IN PART as to Canastra's ADA discrimination claim (Count I) and HRS § 378-2 claim (Count IV), to the extent those claims are based on a "disparate treatment" theory;

(3)     DENIED IN PART as to Canastra's ADA discrimination claim (Count I) and HRS § 378-2 claim (Count IV), to the extent those claims are based on a "failure to accommodate" theory; and

(4)     Otherwise GRANTED as to any claims of discrimination or retaliation based on discrete acts that occurred prior to (1) May 5, 2021 for state law claims and (2) January 5, 2021 for federal law claims; and as to any unexhausted claims pre-2017 and post-2021 (if any).

---

[1] Canastra conceded to dismissal of her Rehabilitation Act claim at the hearing on the motion.

## II. <u>BACKGROUND</u>

**A.     Factual Background[2]**

Canastra first worked at Safeway in Alaska in 1974.  ECF No. 51-2 at PageID.218.  In 1997, she was transferred to Maui, and began working at Kahului Safeway as a grocery manager.  *Id.*  There are four Safeway locations on Maui: Kahului, Kihei, Lahaina, and Maui Lani.  *Id.* at PageID.226.  In 1999, Canastra was rotated to the Lahaina location, and in 2000, to the Kihei location.  *Id.* at PageID.219–225.  In January 2005, Canastra was promoted to First Assistant Store Director ("ASD") at the Kihei location.  *Id.* at PageID.225.  The ASD reports to the store director (previously referred to as the store manager).  *Id.* at PageID.335; ECF No. 51-5 at PageID.625.  The duties of an ASD include overseeing store operations in the absence of the store director, managing employees and inventory, implementing company merchandising policy, and tracking store performance.  ECF No. 51-2 at PageID.335–336.

---

[2]  At this summary judgment stage, the court sets forth the factual background construing the evidence in the light most favorable to Plaintiff.  *See, e.g.*, *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019) (reiterating that, at summary judgment, courts "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor") (citation omitted).

In 2013, Canastra applied for the store manager position in Kihei.  *Id.* at PageID.237.  The district manager[3] at that time, George Glukfeld, did not select her, instead choosing a younger male candidate from Oahu.  *Id.* at PageID.237–238.  Canastra spoke to several individuals about being passed over for the position, including her interviewer, and they were upset that she did not get the position because she was "more than qualified."  *Id.* at PageID.238.  This was the "first discrimination that [Canastra] felt . . . was because of [her] age."  *Id.* Afterward, Canastra believes that Glukfeld began transferring Canastra to progressively less desirable store locations as "punishment."  ECF No. 54-10 at PageID.832–834, 854, 870.

The Kihei store was, according to Canastra, a "flagship" store, with the "number-one profit, number-one sales in the entire company."  ECF No. 54-10 at PageID.832.  In 2017, Canastra was transferred from Kihei to the old Kahului store.  *Id.* at PageID.832.  The old Kahului store was, at that time, not profitable, and it had age-related water heating and sewage problems.  *Id.* at PageID.832–833. Canastra helped make the store profitable again.  *Id.* at PageID.832.  In July 2019, when Safeway decided to close the old Kahului store, Canastra was transferred to

---

[3] A district manager appears to be one level higher than store director.  *See* ECF No. 51-3 at PageID.614; ECF No. 51-7 at PageID.631.

the new Kahului store, where she was "miserable."  ECF No. 51-2 at PageID.227;

ECF No. 54-10 at PageID.840.

On March 6, 2021, Canastra went to Dr. Linda Tetor, complaining of

stress, anxiety and nightmares.  ECF No. 51-2 at PageID.229–230.  These

symptoms, which she had been experiencing for years, had been progressively

getting worse.  *Id.* at PageID.230.  Dr. Tetor talked to her about medication, and

gave her a note limiting her work to forty hours per week.  *Id.* at PageID.229, 561.

Canastra spoke to her Kahului store manager, Davin Kinoshita, and showed him

the doctor's note.  ECF No. 54-10 at PageID.846.  Kinoshita told her that he would

take care of the matter, and reduced her schedule to nine-hour shifts with a one-

hour lunch break.  ECF No. 51-2 at PageID.228–229, 231–234; ECF No. 54-10 at

PageID.844, 848.  In practice, however, Canastra's hours substantially exceeded

this schedule:  She often worked through lunch, and was able to leave after nine

hours only approximately one out of five days.  ECF No. 51-2 at PageID.234, 241;

ECF No. 54-10 at PageID.848.  Nonetheless, the new schedule worked for

Canastra "most of the time."  ECF No. 54-10 at PageID.848.

In the summer of 2021, Clayton Eto, who became Canastra's district

manager after Glukfeld was promoted to vice-president of operations, ECF No. 54-

10 at PageID.878, flew from Oahu to Maui to tour the Kahului store on two

occasions.  *Id.* at PageID.866.  On both occasions, he asked Canastra if she was thinking of retiring.  *Id.*

In late August or early September of 2021, when Canastra had been working reduced hours for approximately six months, Eto informed Kinoshita and two other store managers on Maui (the Lahaina and Kihei store managers) that the ASDs would be "rotated" to different store locations on Maui.  ECF No. 51-3 at PageID.608–609.  On September 3, 2021, Kinoshita informed Canastra that she would be rotated to the Lahaina Safeway.[4]  ECF No. 54-2 at PageID.765; ECF No. 54-3 at PageID.777.  Canastra's commute from her home in Kihei to the Kahului Safeway was around fifteen minutes each way, ECF No. 54-10 at PageID.823–824, while the commute from Canastra's home to the Lahaina Safeway was around one hour each way.  ECF No. 54-10 at PageID.871.  According to Canastra, the Lahaina store is the least desirable store for manager-level employees because of the high cost of living in the area.  *Id.* at PageID.872–873.  Furthermore, the store deals with a high volume of sales, making it a busy and stressful place to work.  *Id.* at PageID.871–872; ECF No. 51-3 at PageID.605.

---

[4]  Although Kinoshita did not recall the exact date of the conversation in which he informed Canastra she would be transferred, he believes it occurred "a few days before the official transfer date."  ECF No. 54-2 at PageID.765.  He recalls speaking to Canastra on a Friday, either September 3 or September 10.  *Id.* at PageID.766.  Thus, this conversation likely occurred on September 3, the last Friday before Canastra went on medical leave on September 9.  *Id.*

On September 7, 2021, Canastra texted Eto and asked him to call her. ECF No. 51-2 at PageID.243–244. She expressed her opposition to going to the Lahaina Safeway, telling Eto that she had a medical condition and that she had a reduced schedule at Kahului. *Id.* at PageID.244, 248; ECF No. 54-7 at PageID.807. Eto explained that he wanted another ASD to transfer out of the Lahaina store because she had failed the store manager training there, and for Canastra to replace her. ECF No. 51-2 at PageID.244. Canastra had already passed the store manager training and had the most experience, so Eto believed she could handle Lahaina, the highest volume store. ECF No. 51-3 at PageID.605. On the call, Eto refused to reconsider the transfer decision. ECF No. 54-10 at PageID.874.

After the call, Canastra sent an email to Eto reiterating her opposition to the transfer. ECF No. 54-7 at PageID.807. She again told him that she had a reduced schedule (she "gets off at 3") and that she did not "want to leave [the transfer] as an open possibility." *Id.* Eto responded that Canastra should go to the Lahaina location starting on September 12, that she should see how it goes for the next couple of weeks, and that if she needs special accommodations she should reach out to HR. *Id.*; ECF No. 51-2 at PageID.243–244, 248–249.

That evening (September 7), Canastra forwarded Eto's email to two Safeway HR employees, Nicole Orear and Courtney Miller, and told them that she would follow up with them after her doctor's appointment.  ECF No. 51-2 at PageID.510–512.  Miller responded and asked Canastra to call her tomorrow.  *Id.* at PageID.511.  The next day, Canastra responded to Miller's email, stating that she explained her concerns in the forwarded email, that the move would "drastically effect (sic) her health and wellbeing" and that she had been accommodated all through the COVID-19 pandemic and is close to retirement.  *Id.* at PageID.510.  Miller then asked Canastra if she had the accommodation paperwork so she would not have to go back to the doctor again after her appointment.  *Id.*  Canastra confirmed she did.  *Id.*

On September 9, 2021, Dr. Tetor diagnosed Canastra with "stress & [a]nxiety with Job & Job relocation."  ECF No. 51-2 at PageID.570.  Dr. Tetor recorded the "date of injury" as September 7, 2021, the day Canastra spoke to Eto about the transfer, and recommended Canastra be removed from work for six months.  *Id.* at PageID.514, 570–571.  Canastra has been on leave since September 9.  *Id.* at PageID.248, 259.

On November 17, 2022, Safeway wrote to Canastra to offer her an ASD position in the Kihei location.  *Id.* at PageID.257.  Canastra refused because

her continuing medical problems precluded her from returning to work.  *Id.* at

PageID.257–258.

**B.      Procedural History**

Canastra submitted complaints to the Equal Employment Opportunity

Commission ("EEOC") and the Hawaii Civil Rights Commission on November 1,

2021.  *Id.* at PageID.268–270.  The EEOC issued a right to sue letter on February

14, 2023, and the HCRC consequently closed its case on February 17, 2023.  *Id.* at

PageID.271, 276.

Canastra filed her Complaint in this court on May 12, 2023.  ECF No.

1.  Safeway filed its Motion for Summary Judgment on August 19, 2024, ECF No.

50, to which Canastra filed an Opposition on September 30, 2024, ECF No. 55.

Safeway filed a Reply on October 7, 2024.  ECF No. 56.  A hearing was held on

November 7, 2024.  ECF No. 62.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary

basis on which a reasonable fact finder could find for the nonmoving party, and a

dispute is 'material' only if it could affect the outcome of the suit under the

governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of

a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

(9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-moving party bears the burden of proof at trial, the moving party

need only prove that there is an absence of evidence to support the non-moving

party's case." *Id.* (citing *Celotex*, 477 U.S. at 325). "When the moving party has

carried its burden . . . , its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts"; instead, the opponent must

"come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986)

(citation, footnote, and internal quotation marks omitted). "This burden is not a

light one. The non-moving party must show more than the mere existence of a

scintilla of evidence." *In re Oracle*, 627 F.3d at 387; *see also Anderson*, 477 U.S.

at 248 (stating that a party cannot "rest upon the mere allegations or denials of his

pleading" in opposing summary judgment).

When considering a motion for summary judgment, the court views

the facts and draws reasonable inferences in the light most favorable to the

10

nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Moreover, it is not the court's duty to comb through the record to determine whether the evidence unmistakably favors one side or the other—the court must instead ask whether a fair-minded jury could return a verdict for the plaintiff based on the plaintiff's presentation of the evidence. *See Anderson*, 477 U.S. at 252.

## IV. **DISCUSSION**

**A.    ADA and HRS § 378-2 Claims (Counts I and IV)**

Canastra raises two types of disability discrimination claims under the ADA and HRS § 378-2: a failure to accommodate claim and a disparate treatment claim.[5] The ADA defines "discriminat[ion] against a qualified individual on the basis of disability" to include both disparate treatment ("excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual") and failure to accommodate ("not making reasonable

---

[5] Canastra's ADA and HRS § 378-2 claims are analyzed in the same manner. *See, e.g.*, *Assaturian v. Hertz Corp.*, 2014 WL 4374430, at *6 (D. Haw. Sept. 2, 2014) ("[B]ecause the definitions of disability in the [ADA] and HRS § 378-2 are substantially identical, the Hawaii Supreme Court has expressly adopted the [ADA] analysis for establishing a prima facie case of disability discrimination under HRS § 378-2, and looks 'to the interpretations of analogous federal laws by the federal courts for guidance.'").

accommodations to the known physical or mental limitations of an otherwise

qualified individual with a disability who is an applicant or employee").  42 U.S.C.

§ 12112.  A failure-to-accommodate claim "is analytically distinct from a claim of

disparate treatment or impact under the ADA."  *Dunlap v. Liberty Nat. Prods.*, 878

F.3d 794, 798 (9th Cir. 2017) (quoting *Johnson v. Bd. of Trustees of Boundary*

*Cnty. Sch. Dist.*, 666 F.3d 561, 567 (9th Cir. 2011)).  The court addresses each

theory separately.

### 1.    Failure to Accommodate

#### a.    Legal Principles

The ADA treats the failure to provide a reasonable accommodation as

an act of discrimination if (1) the employee is a qualified individual with a

disability, (2) the employer receives adequate notice of the need for

accommodation, and (3) a reasonable accommodation is available that would not

place an undue hardship on the operation of the employer's business.  *Snapp v.*

*United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (citing 42 U.S.C.

§ 12112(b)(5)(A)).  It is the employer's burden to demonstrate that an

accommodation would cause undue hardship.  *Id.*

An employee notifying an employer of a need for an accommodation

"triggers a duty to engage in an 'interactive process' through which the employer

and employee can come to understand the employee's abilities and limitations, the

employer's needs for various positions, and a possible middle ground for

accommodating the employee." *Id.* (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105,

1111–16 (9th Cir. 2000) (en banc), *vacated on other grounds sub nom. US*

*Airways, Inc. v. Barnett*, 535 U.S. 391, 406 (2002)).  "Recognizing the importance

of the interactive process, the Ninth Circuit has also held that if an employer fails

to engage in good faith in the interactive process, the burden at the summary-

judgment phase shifts to the employer to prove the unavailability of a reasonable

accommodation." *Id.* (citations omitted).  Thus, "an employer cannot prevail at the

summary judgment stage if there is a genuine dispute as to whether the employer

engaged in good faith in the interactive process." *Barnett*, 228 F.3d at 1116.

> b.    *Analysis*[6]

>> i.    The initial requirements

>>> 1)    Qualified individual with a disability

A qualified individual is one who can perform the essential functions

of the job, with or without reasonable accommodation.  42 U.S.C. § 12111(8);

---

[6] Unlike an ADA disparate treatment claim, a failure to accommodate claim is not
analyzed under the familiar *McDonnell Douglas* burden shifting framework because liability
does not "turn on the employer's intent or actual motive."  *Peebles v. Potter*, 354 F.3d 761, 766
(8th Cir. 2004); *see also Nadler v. Harvey*, 2007 WL 2404705, at *9 (11th Cir. Aug. 24, 2007)
(noting that most circuits hold that the *McDonnell Douglas* burden shifting framework is not
applicable to reasonable accommodation claims, and collecting cases).

*Tsuji v. Kamehameha Sch.*, 154 F. Supp. 3d 964, 973 (D. Haw. 2015).  Canastra

provided sufficient evidence to meet this standard at this summary judgment stage.

At the time of her transfer, Canastra had been working as an ASD since 2005.

ECF No. 51-2 at PageID.225.  Her manager, Kinoshita, testified that she was

highly competent, and her job performance always met or exceeded expectations in

reviews.  ECF No. 54-2 at PageID.757, 761.  Kinoshita stated that even when her

shifts were reduced to nine hours, she always got her work done and did it well.

*Id.* at PageID.761–765.  Both Canastra and Kinoshita found the reduced-hours

arrangement acceptable, and would have continued it but-for the transfer.  *Id.* at

PageID.768.  Holding a position for a period without discipline, or receiving

positive performance reviews in that time, is evidence that an individual is

qualified for that position.  *Wunderlin v. AB Car Rental Servs., Inc.*, 2018 WL

5087222, at *7 (D. Haw. Oct. 18, 2018).

Safeway argues that working ten-hour shifts was an "essential

function" of the ASD job—therefore, Canastra was not qualified, as she could not

fulfill the essential requirements of the position "with or without" reasonable

accommodation.  ECF No. 50-1 at PageID.187.  But construing the facts in the

light most favorable to Canastra, ten-hour shifts were not essential to the ASD

position.  Although Safeway points to the ASD job description and the schedules

of ASDs on Maui in support of its argument, neither establishes that ten-hour shifts were essential.  The ASD job description states that "holiday, evening, and weekend work may be required"—but it does not specify when this work is to be undertaken, or even mention ten-hour shifts.  ECF No. 51-2 at PageID.337. Safeway's evidence that the ASDs on Maui were routinely scheduled for ten-hour shifts, ECF No. 51-9 at PageID.635–654, does not establish that ten-hour shifts were essential to the ASD position—it shows, at most, that ten-hour shifts were normal for ASDs on Maui.  And although Eto attested that the ASD position requires "working in excess of 8 hours per day," working more than eight hours in a day is not equivalent to working a ten-hour shift.  ECF No. 51-7 at PageID.631. Again, Safeway accommodated Canastra with nine-hour shifts for over six months and she performed her job satisfactorily, indicating that ten-hour shifts were not essential.

What's more, the record indicates that Canastra did exactly what the job description required: She worked after hours as required to fulfill her responsibilities, in excess of eight hours per day, even after being granted her accommodation.  She testified that four days out of five she continued to work after the end of her shift, ECF No. 51-2 at PageID.234, and Kinoshita said that during her accommodation period, if Canastra left earlier than she had before, "it

15

wasn't by much," ECF No. 54-2 at PageID.759.  The fact that, on paper, Canastra

only documented working forty hours per week, does not establish she was not

fulfilling the essential requirements of the ASD position.

       In sum, Canastra has established the first requirement under *Snapp*.

       2)     Adequate notice

       Second, Canastra gave adequate notice to Safeway of her disability.

She showed Kinoshita (her manager) her doctor's note limiting her work hours to

forty per week.  ECF No. 54-10 at PageID.846.  "An employee requesting a

reasonable accommodation" must only use "plain" language and "need not

mention the ADA or use the phrase 'reasonable accommodation.'"  *Barnett*, 228

F.3d at 1112.

       3)     Availability of reasonable accommodation

       The third requirement is not at issue.  Safeway does not argue that a

reasonable accommodation was unavailable or would cause undue hardship.  The

summary judgment record indicates that a reasonable accommodation was indeed

available—Safeway could either let Canastra continue working at Kahului or

transfer her to Kihei.  Safeway's proffered rationale for transferring Canastra to

Lahaina was because another employee had failed the store manager qualification

and Safeway wanted to give Canastra the opportunity to work at a high-volume

16

store—not for any pressing operational need.  ECF No. 51-2 at PageID.244; ECF

No. 51-3 at PageID.614–615.  Thus, Eto could have placed Canastra elsewhere.

The Kihei Safeway had the highest profits and sales on the island, and was close to

Canastra's house, so it could fulfill Safeway's training objective for her as well as

her needs.  ECF No. 54-10 at PageID.823–824, 832.  And there is no evidence to

suggest that the other ASD being rotated (or the ASD who was not rotated), though

less experienced than Canastra, could not fill the Lahaina position.

   Thus, Canastra has met all three elements of the initial case for a

failure to accommodate claim.

     ii.  There is a dispute of material fact over whether Safeway
         failed to engage in the interactive process

   Construing the facts in the light most favorable to Canastra, a

reasonable jury could find that Safeway was responsible for a breakdown in the

interactive process in September 2021.[7]

   There is no dispute that the initial interactive process in March 2021,

went smoothly:  Canastra's request for accommodation of her stress condition was

promptly fulfilled.  Canastra's doctor told her to seek accommodation, she showed

---

   [7] For the purposes of this summary judgment motion, the court considers the interactive
process to have begun in March 2021 and extended through September 2021—that is, it was
initially triggered by Canastra's request to Kinoshita in March, and triggered again by Eto
transferring her in September (because Eto gave no indication she could keep her reduced
schedule accommodation at Lahaina).

Kinoshita her doctor's note, and Kinoshita accommodated Canastra's disability informally by reducing her hours.  ECF No. 51-2 at PageID.232–233.

But "the duty to accommodate is a continuing duty that is not exhausted by one effort."  *See U.S. E.E.O.C. v. UPS Supply Chain Sols.,* 620 F.3d 1103, 1111 (9th Cir. 2010) (quoting *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001)).  In September, Eto decided to transfer Canastra to Lahaina—implicitly removing the accommodation that Kinoshita had granted, and again triggering the interactive process.[8]  Even if Eto did not know Canastra was being accommodated for a disability when he made the transfer decision, ECF No. 51-3 at PageID.613, this is no defense—a disabled employee need only request accommodation from her manager to trigger the interactive process (which Canastra did).  *See, e.g.*, *Barnett*, 228 F.3d at 1109, 1116 (holding that Barnett's request to his station manager for accommodation was a request to his employer that triggered the interactive process).

---

[8]  Safeway argues that Canastra did not know what her schedule would have been in Lahaina (implying that she was wrong to assume that she would be working ten-hour shifts there).  ECF No. 50-1 at PageID.187 n.5.  But given that Canastra mentioned her reduced schedule to Eto by phone and email and he did not offer to preserve that schedule, ECF No. 54-7 at PageID.807, her assumption that she would be required to work ten-hour shifts was reasonable.

In any event, when Canastra and Eto spoke on September 7, she explained her medical condition and her accommodation.  ECF No. 51-2 at PageID.244, 248.  According to Canastra, however, Eto "wasn't listening" and refused to reconsider the transfer decision.  ECF No. 54-10 at PageID.874–877.  Canastra reiterated her request by email, and Eto, again, refused.  ECF No. 54-7 at PageID.807.  He told Canastra to reach out to HR if she needed accommodation— but he still insisted that she go to Lahaina.  *Id.*

Thus, from Canastra's perspective, Safeway granted an accommodation, then unilaterally removed that accommodation (by transferring Canastra to a new location without offering a reduced schedule), then refused to engage in the interactive process further.  An employer's obligation to engage in the interactive process "continues when the employee asks for a different accommodation."  *UPS Supply Chain Sols.,* 620 F.3d at 1111 (quoting *Humphrey*, 239 F.3d at 1138).  Thus, the interactive process broke down, and a reasonable jury could find that Safeway was responsible.

Safeway argues that Canastra "was accommodated with the only request she made"—i.e., her initial request in March 2021—and that Canastra's current medical leave is a reasonable accommodation that Safeway continues to provide.  ECF No. 50 at PageID.187–188.  But construing the evidence in

19

Canastra's favor, Safeway *removed* Canastra's accommodation and (at least initially) refused to engage in any interactive process, which caused the stress that led her to take a medical leave. *See* ECF No. 51-2 at PageID.570–571. Although Canastra's leave might have cut off Safeway's opportunity to offer further accommodations, a reasonable jury could nonetheless attribute the breakdown in the interactive process to Safeway. *See Barnett*, 228 F.3d at 1115–16.

Thus, Canastra has established the primary case of failure to accommodate, and there is a dispute of fact as to whether the interactive process broke down because of Safeway. The court DENIES summary judgment on Canastra's ADA and HRS § 378-2 failure to accommodate claims. *See Barnett*, 228 F.3d at 1116 ("[A]n employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process.").

### 2.    *Disparate Treatment*

#### a.    *Legal Principles*

Title I of the ADA, 42 U.S.C. § 12112(a), prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges

20

of employment."  In the absence of direct evidence, for a disparate treatment claim, the reviewing court applies the burden-shifting analysis derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–50 (2003) (applying *McDonnell Douglas* burden shifting framework to ADA disability discrimination claim); *Thorn v. BAE Sys. Haw. Shipyards, Inc.*, 586 F. Supp. 2d 1213, 1218–19 (D. Haw. 2008).  Under this burden-shifting analysis, Plaintiff must first establish a prima facie disability discrimination claim.  *See, e.g.*, *Raytheon*, 540 U.S. at 49 n.3.  Plaintiff must put forth evidence that:

> (1) [she] is "disabled" within the meaning of the statute;
> (2) [she] is a "qualified individual" (that is, she is able to perform the essential functions of [her] job, with or without reasonable accommodations); and (3) [she] suffered an adverse employment action "because of" [her] disability.

*Tsuji*, 154 F. Supp. 3d at 973 (citing *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001)).

"At the summary judgment stage, the 'requisite degree of proof necessary to establish a *prima facie* case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence.'"  *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

b.    *Analysis*

Assuming (without deciding) that the transfer to Lahaina is an adverse

action, Canastra has not shown the third element of her prima facie case:  There is

no evidence in the record that she was transferred to Lahaina because of her

disability.  Eto testified that he did not know about Canastra's disability or her

reduced schedule in Kahului when he made the decision to rotate the ASDs.  ECF

No. 51-3 at PageID.613.  And Canastra has not put forward any evidence to

contradict Eto's assertion.  She did not tell Eto about her stress condition or her

reduced hours until after the transfer decision was made.  *Id.* at PageID.600–601.

She only told Kinoshita about her medical condition, and he accommodated her

informally without telling Eto or HR.  ECF No. 54-2 at PageID.764, ECF No. 54-

10 at PageID.852, 879–880; ECF No. 51-4 at PageID.620–621.  Because Eto did

not know about Canastra's disability or her reduced hours, his decision to transfer

her cannot have been "because of" Canastra's disability.

A cat's paw theory might establish liability if a biased non-decision-

making employee "influenced or was involved in the decision or decisionmaking

process."  *Mattioda v. Nelson,* 98 F.4th 1164, 1178 (9th Cir. 2024).  Canastra

testified that George Glukfeld, vice-president of operations at the time of the

transfer and her former district manager, harbored discriminatory animus toward

22

her.  ECF No. 51-2 at PageID.237–239.  If Glukfeld influenced Eto's decision,

Plaintiff may be able to establish, under a cat's paw theory, that Eto's decision was

nonetheless discriminatory.  ECF No. 54-10 at PageID.853 (Canastra referring to

Glukfeld as the "mastermind" behind the rotation decision), 876–878 (Canastra

alleging that Eto once told her Glukfeld makes "all the decisions" for the Hawaii

district).

But even assuming Glukfeld was biased against Canastra, Eto testified

that Glukfeld had no involvement in the transfer decision.  ECF No. 51-3 at

PageID.603.  And, again, Canastra has not offered any evidence of Glukfeld's

involvement in her transfer beyond her speculation, which do not create a disputed

issue of fact.  *See Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("Mere

allegation and speculation do not create a factual dispute for purposes of summary

judgment.") (alterations and citation omitted).  Without any evidence, Canastra

cannot prevail on a cat's paw theory.

The court therefore GRANTS summary judgment as to Canastra's

ADA and HRS § 378-2 disparate treatment claims.

**B.      ADEA Claims (Count II)**

**1.      *Legal Principles***

The ADEA prohibits employer discrimination "because of [an] individual's age."  29 U.S.C. § 623(a)(1).  Specifically, an employer may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  *Id.*  Because Canastra has provided only circumstantial evidence of age discrimination, the court will apply the *McDonnell Douglas* framework.  *See Straub v. Cnty. of Maui*, 2019 WL 5088738, at *11 (D. Haw. Oct. 10, 2019); *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004) ("The *McDonnell Douglas* formula applies under the ADEA where an employee must rely on circumstantial evidence.").

To state a claim under the ADEA, a plaintiff must make a prima facie case of discrimination, showing "(1) membership in a protected class (forty years old or older)[9]; (2) satisfactory job performance; (3) discharge; and (4) replacement by 'substantially younger employees with equal or inferior

---

[9]  At all relevant times, Canastra was over forty years old.  *See* ECF No. 54-7 at PageID.807.

qualifications.'"[10]  *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023) (quoting

*Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1281 (9th Cir. 2000)).  If the plaintiff

does so, the burden of production, but not persuasion, then shifts to the employer to

articulate some legitimate reason for the challenged action that is not related to age

discrimination.  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123–24 (9th Cir.

2000).  If the employer establishes a legitimate reason that is not related to age

discrimination, the plaintiff must show that the articulated reason is pretextual

"either directly by persuading the court that a discriminatory reason more likely

motivated the employer or indirectly by showing that the employer's proffered

explanation is unworthy of credence."  *Id.* at 1124.

## 2. *Analysis*

Assuming (without deciding) that Canastra established her prima facie

case under the ADEA, her claim still fails—Safeway has articulated a legitimate

reason for the transfer that is not related to age discrimination and is not pretextual.

Glukfeld, the former district manager for Hawaii, attested that ASDs are

periodically rotated to other stores to meet operational needs or for training

---

[10]  Although "discharge" and "replacement" are not at issue in Canastra's ADEA claim,
"the prima facie factors can 'vary depending on the situation.'"  *Opara*, 57 F.4th at 722 n.11
(quoting *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1460 (9th Cir. 1985), *overruled on other
grounds by Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266–67 (9th Cir. 1991)).  In
Canastra's case, the third element alleged is an adverse employment action (the transfer to
Lahaina) and the fourth element alleged is better treatment for substantially younger employees.

purposes.  ECF No. 51-6 at PageID.629.  In this case, Safeway wanted the Lahaina

ASD to transfer out of the Lahaina store because she had failed the store manager

training there, and for Canastra to replace her.  ECF No. 51-2 at PageID.244.

Canastra had already passed the store manager training and had the most

experience, so Eto believed she could handle the highest volume store.  ECF No.

51-3 at PageID.605–607.  Safeway's rationale, which combines employee training

and operational needs, is legitimate and non-discriminatory.

       In arguing Safeway's rationale is pretextual, Canastra points only to

her own deposition, in which she alleges that Eto asked her twice in the summer of

2021 whether she was thinking about retirement.  ECF No. 54-10 at PageID.866.

But simply asking an employee about retirement does not, in itself, give rise to an

inference of age discrimination.  *See Merlo v. McDonough*, 2024 WL 3086015, at

*9 (C.D. Cal. June 21, 2024) (citing *McCoy v. Barrick Gold of N. Am., Inc.*, 705

F.App'x 645, 646 (9th Cir. 2017)).  She also cites to her concise statement of facts,

but the referenced sections of her deposition contain no further support for her

argument.  In sum, Canastra has not shown that Safeway's rationale for the transfer

was pretextual.

       Summary judgment is GRANTED and Canastra's ADEA claim is

dismissed.

26

## C.    Retaliation Claim Under the ADA (Count IV)

To establish a prima facie case of retaliation under the ADA,[11] an employee must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the two. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

Canastra identifies her request to reduce her working hours to forty hours per week as the protected activity at issue.  *See* ECF No. 55 at PageID.904; *cf. Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (holding that requesting reasonable accommodation for a disability is a protected activity).  But Canastra cannot establish the causal element of her prima facie case of retaliation, because she cannot show a causal connection between the rotation of the three ASDs and her request for a reduced schedule.  Eto did not know about her request for accommodation when he decided to transfer her.  ECF No. 51-3 at PageID.613.  *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.") (citations omitted).    Summary judgment is therefore GRANTED as to Canastra's retaliation claim.

---

[11]  At the hearing, Plaintiff clarified she was only bringing an ADA retaliation claim and was not bringing a retaliation claim under the ADEA.

**D.      Administrative Exhaustion and Timeliness**

Safeway argues that "[a]ny alleged discriminatory or retaliatory events that occurred prior to May 5, 2021 are untimely under Hawaii law, and any such alleged events that occurred prior to January 5, 2021 are untimely under federal law." ECF No. 50-1 at PageID.168. Safeway further argues that Plaintiff failed to exhaust administrative remedies for any claims pre-2017 or post-2021. *Id.* at PageID.177. At the hearing, Canastra conceded that she was not making any claim based on a discrete act by Safeway outside of these time frames.

## V.  <u>CONCLUSION</u>

Safeway's motion for summary judgment is:

(1)      GRANTED as to Canastra's ADEA claim (Count II), Rehabilitation Act claim (Count III), and ADA retaliation claim (Count V);

(2)      GRANTED IN PART as to Canastra's ADA discrimination claim (Count I) and HRS § 378-2 claim (Count IV), to the extent those claims are based on a "disparate treatment" theory;

(3)      DENIED IN PART as to Canastra's ADA discrimination claim (Count I) and HRS § 378-2 claim (Count IV), to the extent those claims are based on a "failure to accommodate" theory; and

(4)    Otherwise GRANTED as to any claims of discrimination or

retaliation based on discrete acts that occurred prior to (1) May 5, 2021 for state

law claims and (2) January 5, 2021 for federal law claims; and as to any

unexhausted claims pre-2017 and post-2021 (if any).

To be clear, the only claims remaining in the case are Canastra's ADA

and HRS § 378-2 claims based on a "failure to accommodate" theory.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 9, 2024.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Canastra v. Safeway*, Civ. No. 23-00210 JMS-RT Order Granting in Part and Denying in Part
Safeway's Motion for Summary Judgment, ECF No. 50